## SIDNEY v. WHITE.

1. A negro who, by the law of the place of his birth, is entitled to his freedom when his mother arrives at a particular age, will be entitled to his freedom in this State, though sold as a slave, and brought here before that event happened.

2. Where a female slave is entitled to freedom when she arrives at a particular age, her children born in this State, before the event happens, are slaves.

3. Where a negro held in this State as a slave, sues for his freedom, if his right to freedom depends upon the law of the place of his birth, the law must be proved as a fact upon the trial of the cause.

Error to the Circuit Court of Limestone.

THE plaintiff in error, a colored man, sued for his freedom, and upon the trial of the cause, proved, that by the will of William Patterson, of the State of Delaware, a negro slave woman named Phillis, was bequeathed her freedom, and providing that she should remain in servitude, until she became thirty-one years of age ; and that such a will was legal in Delaware. That she was carried to the State of Tennessee during the term of her servitude, and that whilst there, and before she attained the age of thirty-one years, she gave birth to the plaintiff, who was sold to the husband of the defendant, who was an innocent purchaser, and that the defendant has held him as a slave, since her husband's death.

The court, at the instance of the defendant, charged the

jury, that if they believed the plaintiff was born before his mother attained the age of thirty-one, he was born in slavery, and was not entitled to his freedom. To this charge the plaintiff excepted, and this is the matter now assigned as error.

W. COOPER, for plaintiff in error.

In the case of a life estate and a remainder man a child born pending the life estate goes to the ulterior legatee. [Wheeler's Law of Slavery, 23; Erwin, and others, v. Kilpatrick, et al. 3 Hawkes' N. C. Rep. 456; Tims v. Potter, Martin's N. C. Rep. 22; Preston v. McGaughy, Cook's Rep. 113; Harris v. Clarissa, 6 Yerger's R. 227.] This last case is in full, and on review of all the cases relied on by counsel for defendant in error. [Wheeler's Law of Slavery, 34, section 10; Jacob v. Sharp, Meigs's Rep. in Ten. '38, '39, p. 114; Harrell v. George, 3 Hump. R. 255; Isaac v. Frost's Ex'r, 6 Randolph, 652.]

McCLUNG, contra.

A testator directs that a female slave shall be free at a certain period—her children born before that period, and after testator's death, are slaves. [Ned v. Beal, 2 Bibb, 298.]

A, by will, bequeathed her slave Mary to B, for life, and that at B's death, Mary should be free. During the life of B, Mary has issue—they are slaves. [Chew v. Gary, 6 Harris & Johnson, 526.]

A slave who has a deed of emancipation, under which she is to be free at the grantor's death, is in the meantime a *statu liber*, and children born from her, meantime, are slaves. [8 Martin's Lou. Rep. 218; Law of Slavery, 206; to the same effect, 4 Leigh, 252; 10 Id. 277; 6 Rand. 652.]

ORMOND, J.—Our law recognizes the existence of negro slavery, and protects the owner of such property in its enjoyment. But the law, and the policy of the government, alike forbid the creation of the state, or condition of slavery, or involuntary servitude. No one can by any act of his convert a free man into a slave; and if by birth, or by the law of his domicil, an individual is free, or entitled to freedom at a cer-

92

tain time, or on the happening of a certain event, the right will follow him every where. It results necessarily from these premises, that if the plaintiff was a free man by the laws of the State of Tennessee, the place of his birth; or if at a subsequent period, by that law, he would have been entitled to freedom, on his mother becoming thirty-one years of age, pursuant to the will of her former master, he cannot be deprived of that right by being sold as a slave in Tennessee, and as such brought to this State, either before, or after the contingency happened, which entitled him to freedom.

The first point to be considered therefore, is, whether the plaintiff was entitled to freedom, on his mother arriving at the age of thirty-one years. This question appears to be settled in a large majority of the slaveholding States, where it has arisen, against the right of one so circumstanced, to freedom. The solution of this question, depends upon the ascertainment of the *status* of the mother, at the time of the birth of the child. The bequest by which this right is asserted, is thus stated in the bill of exceptions: " A negro woman slave, named Phillis, was bequeathed her freedom, providing that she should remain in servitude, until she should become thirty-one years of age." Which is precisely equivalent to a declaration, that she should be entitled to her freedom, when she arrived at the age of thirty-one, and by necessary consequence, until the event happens, she continues a slave. We say by necessary consequence, for there is no middle ground known to our law, between freedom and slavery. Until the event happened, upon which the mother was entitled to her freedom, she continued a slave, subject to all the disabilities of that condition, and as the condition of the mother ascertains the condition of the child, according to the maxim of the civil law, *partus sequitur ventrem*, which has been adopted in this, and the other slave States, it follows that the child born whilst the mother was a slave, is also a slave. He is not elevated to the condition of a free man, by the subsequent happening of an event which gave his mother freedom, in virtue of a will made previous to his birth, any more than he would be, by her manumission made subsequent to it. The law has been thus held in Maria v. Surbaugh, 2 Rand. 228; Crawford v. Moses, 10 Leigh, 277; Catin v. D'Orge-

noy's heirs, 8 Mar. Lou. 218; Chew v. Gary, 6 H. & J. 526; Ned v. Beall, 2 Bibb, 298.]

In the State of Tennessee, as we learn from the reported decisions of that State, a different rule prevails, and it is there held, that one in the condition of the plaintiff, is entitled to his freedom, when his mother becomes free. The precise question here presented, arose in Harris v. Clarissa, 6 Yerg. 227. There, a will was made in Maryland, by which freedom was given to certain slaves, when they arrived at the age of twenty-five, and it was held that the children of the females, born before that period, were entitled to freedom when their mother attained to that age. The same decision was made in Hartsell v. George, 3 Hump. 255, and again in the recent case of Abram v. Dambro, decided November, 1844. From this exposition of the law of Tennessee, the place of the birth of the plaintiff, it is evident if he had remained there, he would have been free when his mother became thirty-one years of age, and this right, as already shown, will follow him wherever he may be carried, and whether he was sold as a slave, before, or after the happening of the event, which entitled him to freedom, if the question in the aspect we have just considered it, was presented upon the record; but it does not appear from the record, that there was any proof offered of the law of the State of Tennessee.

That the law of another State, whether written, or unwritten, where it affects a contract, or is necessary to the ascertainment of any question submitted to, and to be determined by a jury, must be proved as a fact, is a question too well settled to require the citation of authority to support it. The manner of proving the unwritten law of a State, by the production of the accredited reports of its judicial decisions, is fully considered in Inge v. Murphy, 10 Ala. 805.

It is very clear that the law of the State of Tennessee, ascertaining the *status* of the plaintiff, was a fact necessary to be known by the court, and jury, to enable them to ascertain, and determine, whether the plaintiff was a slave or a free man. From the general law, as shown in the preceding part of this opinion, the plaintiff must be considered a slave, even in those countries where manumission by will is allowed, and nothing was shown to the court and jury, repelling this in-

ference.   The charge of the court, therefore, upon the testi-
mony before it, was strictly correct, the only facts in evi-
dence, being the will, and the birth of the plaintiff in Ten-
nessee, before his mother's right to freedom attached.   The
law of Tennessee being a fact, this court cannot take notice
of it, unless it appeared from the record, it 'was in testimony
before the jury, and some action of the court predicated upon
it, so as to present a question, which this court could consider
in its appellate capacity.

There being no error shown upon the record, the judgment
must be affirmed.