ZENITH BUILDING & LOAN ASSOCIATION v. WILLIAM P. HEIMBACH and Another.

June 22, 1899.

Nos. 11,483—(223).

### Mortgage—Usury—Building Society.

*Held*, that the finding and conclusion herein of the trial court to the effect that the plaintiff is a mutual building and loan association, within the meaning of G. S. 1894, §§ 2218, 2794, exempting such associations from the usury laws of the state, and that the mortgage here in question is not usurious, are sustained by the evidence.

### Same—Constitution.

*Held*, that the statutes so exempting such associations are constitutional.

Action in the district court for St. Louis county to foreclose a mortgage.  The case was tried before Moer, J., who found in favor

77 M.—7

of plaintiff; and from an order denying a motion for a new trial, defendants appealed. Affirmed.

*Keyes & Baldwin*, for appellants.

Plaintiff is not a building and loan association within contemplation of the laws which exempt such associations from usury. In such an association there must be mutuality. In order that there may be mutuality, the money should be raised by dues paid in on stock and moneys loaned, and the association should not be a borrowing and loan brokerage institution. See City Loan Co. v. Cheney, 61 Minn. 83. Borrowing money to reloan must not be made an essential element. McCauley v. Building, 97 Tenn. 421; Stiles's Appeal, 95 Pa. St. 122; State v. Building, 35 Oh. St. 258, 263; North Hudson v. First, 79 Wis. 31. See Laws 1889, c. 236, §§ 1, 22. If plaintiff ever was such an association, it has departed from its legitimate purpose and used the privileges of its charter as a mere cloak for usury. One of the fundamental ideas of these associations is that their accumulated funds should be freely loaned to members at a rate fixed by free competitive bidding. Endlich, Bldg. Assns. §§ 42, 375, 378, 397, 399; McCauley v. Building, supra; State v. Greenville, 29 Oh. St. 92, 100; Stewart v. Hamilton (Tenn. Ch. App.) 47 S. W. 1106; Stiles's Appeal, supra; Laws 1889, c. 236, § 30.

Many courts have held that a premium means a present sum, and that a sum in addition to interest to be paid in instalments is not a premium, but only interest under another name. Endlich, Build. Assns. § 393. Such a premium renders the loan usurious. Mechanics v. Wilcox, 24 Conn. 147, 152; Birmingham v. Maryland, 45 Md. 541. The fact that no one was permitted to become a stockholder except on condition of becoming a borrower shows conclusively the spirit and purpose of the organization. People's v. Rising (Tex. Civ. App.) 34 S. W. 147. Central B. & L. Assn. v. Lampson, 60 Minn. 422, is distinguishable. See Kupfert v. Guttenberg, 30 Pa. St. 465, 470; Hawkins v. American, 96 Ga. 206; Endlich, Bldg. Assns. § 7; Central B. & L. Assn. v. Lampson, supra; Myers v. Alpena, 117 Mich. 389; Martin v. Nashville, 42 Tenn. 418; Hagerman v. Ohio, 25 Oh. St. 186, 204.

If plaintiff is such an institution as was intended to be exempt from the usury laws, the act is class legislation and unconstitutional. Such laws have been held unconstitutional even when applied to strictly mutual societies doing business on the building society plan. Henderson v. Johnson, 88 Ky. 191. The act will be so construed as to admit of its being held constitutional, if one interpretation would make it so and another not. Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249. But the law cannot adopt a mere arbitrary classification. Nichols v. Walter, 37 Minn. 264, 271. See Gordon v. Winchester, 75 Ky. 110; Cameron v. Chicago, M. & St. P. Ry. Co., 63 Minn. 384; Maudlin v. American S. & L. Assn., 63 Minn. 511; State v. Sheriff of Ramsey Co., 48 Minn. 236.

*J. B. Richards*, for respondent.

The law exempting building and loan associations from the usury law is constitutional. Vermont v. Whithed, 2 N. D. 82; People's v. Billing, 104 Mich. 186; Archer v. Baltimore, 45 W. Va. 37; Winget v. Quincy, 128 Ill. 67; Mechanics v. Allen, 28 Conn. 97; McLaughlin v. Citizens, 62 Ind. 264; Holmes v. Smythe, 100 Ill. 413, 422; Freeman v. Ottawa, 114 Ill. 182. Plaintiff is in fact a building and loan association. Its character is determined by its articles and by-laws. Fitzgerald v. Hennepin Co. Catholic B. & L. Assn., 56 Minn. 424; Central B. & L. Assn. v. Lampson, 60 Minn. 422, 424; United States v. Shain (N. D.) 77 N. W. 1006; Leahy v. National, 100 Wis. 555. See Hawkins v. American, 96 Ga. 206; Thompson, Bldg. Assns. §§ 188, 191. As to the fairness and wisdom of such associations borrowing to reloan to members, see Thompson, Bldg. Assns. § 116; Endlich, Bldg. Assns. § 305; Grommes v. Sullivan, 26 C. C. A. 320, 81 Fed. 45, 43 L. R. A. 419 and cases in note. Defendant is equitably estopped, in the absence of statutes forbidding such by-laws, from raising the question of ultra vires to do the specific acts or to make him a loan in violation of a by-law. United States v. Shain, supra; Endlich, Bldg. Assns. §§ 122, 288, 397; Thompson, Bldg. Assns. §§ 103, 104, 185, 188; Orangeville v. Young, 9 W. N. Cas. 251; McCauley v. Workingman's, 97 Tenn. 421; 5 Thompson, Corp. §§ 6021–6029; Reynolds v. Georgia, 102 Ga. 126; National

Bank v. Matthews, 98 U. S. 621; Central B. & L. Assn. v. Lampson, 60 Minn. 422, 424.

*S. T. Harrison,* by consent, filed a brief for respondent.

START, C. J.

This is an action to foreclose a real-estate mortgage executed April 16, 1892, by the defendants to the plaintiff to secure a loan of $4,000 made by it to the defendant William P. Heimbach. The making of the mortgage and bond secured thereby, and that the payment of interest and premium and dues was not made as the bond and mortgage required, were admitted by the defendants, but they alleged as a defense that the transaction was usurious. The trial court made its findings of fact and conclusions of law to the effect that the mortgage was a valid security, and directed judgment of foreclosure and sale of the mortgaged premises. The defendants appealed from an order denying their motion for a new trial.

The amount agreed to be paid in this case as interest and premium was in excess of interest at the rate of 10 per cent. per annum on the sum loaned, and the real question in this case is this: Is the plaintiff exempt from the usury laws of the state? The defendants claim that the question must be answered in the negative, for three reasons: First, the plaintiff was not organized as a building and loan association, within the meaning of the statute (G. S. 1894, §§ 2218, 2794) exempting such associations from the usury laws of the state; second, if it was so organized, it departed from the purposes of its organization, and used its privileges and its charter as a cover for usurious transactions; third, that the statutes in question are class legislation and unconstitutional, if they apply to such a corporation as the plaintiff.

1. The first and second claims may be considered together, for they are practically one. Tersely stated, the claim is this: The plaintiff is not a building and loan association, because it was organized to do and did do business not within the scope of such associations. It is not claimed by the defendants that the loan in question was usurious because of any specific violation of the principles of building and loan associations in this particular case, but that the plaintiff is not such an association, therefore it is not exempt

from the usury laws of the state, and that all the defendants were required to show, in order to establish their defense, was the fact that the premium and interest which they agreed to pay were in excess of the highest rate of interest allowed by law. The trial court found as a fact that the plaintiff is a mutual building and loan association duly organized under the laws of this state. This finding is challenged by the defendants.

The undisputed evidence establishes these facts: The plaintiff was incorporated under G. S. 1878, c. 34, tit. 2, to commence business June 4, 1888. The general nature of its business was declared in its articles of incorporation to be the accumulation of funds by the contributions of its members, to be loaned to such members as desired the same, and in such manner as might be prescribed by its by-laws. The directors were authorized by its charter to borrow money, in their discretion, for the purpose of loaning it to its members. The limit of its liabilities was originally fixed at $30,000, but it was afterwards raised to $250,000. They were also authorized, in their discretion, to issue or to withhold the stock of the association. The by-laws provided that no money should be sold at a less premium or bonus than 40 per cent., and also that,

"If any application requires immediate attention, the association may make loans between the monthly meetings: provided, such loans are approved, in writing, by the president, secretary, and treasurer, and four other directors, and the premium paid is not less than the highest paid at the last sale of money."

The business was limited to the county of St. Louis and adjoining counties, and it was annually licensed by the public examiner of the state as a mutual building and loan association. It borrowed between the years 1889 and 1895 money for the purpose of reloaning it to persons who were or were about to become stockholders. The amount so borrowed is not disclosed by the evidence. The association, at some time not disclosed by the evidence, but the trial court finds that it was in 1888, passed a resolution to restrict the issue of shares to those who wanted to borrow. On September 2, 1889, at a meeting of the association, the highest bid for money was 70 per cent. After this the money was not put up at auction, as all applications for it were made between meetings; and, after the passage

of the resolution referred to, all persons applying for stock in the association were required to make an application for a loan of money on the stock subscribed, and, as a part thereof, bid a premium of 70 per cent. therefor.

The defendant William P. Heimbach was one of the original incorporators and a director of the plaintiff association, and the holder of 100 shares of its stock before he became a borrower. He made application for a loan, and bid therefor a premium of 70 per cent., and a loan was awarded to him, pursuant to his application for the loan; and defendants executed and delivered to the plaintiff the bond and mortgage described in the complaint, securing the repayment of the loan. The defendants, upon the loan, received from the plaintiff the sum of $4,000, at the time of making it. The defendant William P. Heimbach, also, as a condition of the loan, subscribed for 300 additional shares of stock, which, with the stock then owned by him, were assigned to the plaintiff as further security for the loan. The majority of the directors of the plaintiff were borrowers.

The defendants claim that the provision of the plaintiff's charter authorizing it to borrow money to loan to its members, its by-law fixing a minimum premium, and its resolution limiting the issue of stock to borrowers, destroy that mutuality which is the fundamental basis of the building and loan association, whereby the members loan to one another the funds accumulated by their mutual savings, and, further, that the provisions referred to, and the method of transacting its business, as disclosed by the evidence, justify the conclusion that the plaintiff is a building and loan association in name only, and a mere device and cover for usury. If this be so, the mortgage in question must be held to be void; for the law will ferret out usury with the vigilance of a heresy hunter, no matter how subtle the device or shift adopted to conceal it may be. City Loan Co. v. Cheney, 61 Minn. 83, 63 N. W. 250. But the evidence in this case does not justify the claim of the defendants.

The mere fact that its charter authorized its directors to borrow money to loan to its members does not tend to show that the plaintiff is not a mutual building and loan association, for the borrowing of money to loan to its members standing in need of accommodation

beyond its immediate cash resources would be serving the legitimate purposes of its organization. Endlich, Bldg. Assns. § 301. Nor does the mere fact that it passed a resolution limiting the issue of further stock to borrowers, and that the resolution was enforced, necessarily impeach the claim of the plaintiff to be a building and loan association. It might be otherwise if the limitation was in its charter, and it appeared from the evidence that the promoters or incorporators had subscribed for a large number of shares, and had then adopted and enforced the limitation, and borrowed money to loan to the new members. But, as already suggested, such is not this case. It is not difficult to conceive of contingencies where it would not only be legitimate for a building and loan association to limit the number of shares any one member should be entitled to subscribe for, but also to limit future issues of stock to those who wished to borrow. Some such action would be necessary in cases where the investors were more numerous than the borrowers, and idle funds were accumulating. There is, however, no evidence in this case which would justify the inference that the resolution in question was passed to prevent the accumulation of funds, but the evidence does not warrant the inference that it was passed to serve any fraudulent or improper purpose. We have no statute which requires building and loan associations of the class to which the plaintiff belongs to loan its funds at competitive bidding only, or forbidding them from adopting a by-law fixing a minimum premium. Such a by-law applies to all borrowers alike, and does not trench on the mutuality feature of such associations.

The finding and conclusion of the trial court to the effect that the plaintiff is a mutual building and loan association, within the meaning of the statutes exempting such associations from the usury laws of the state, and that the mortgage in question is valid, are sustained by the evidence. Central B. & L. Assn. v. Lampson, 60 Minn. 422, 62 N. W. 544.

2. It has been assumed by this court, in several cases, that the provisions of the statute (G. S. 1894, §§ 2218, 2794) exempting building associations from the operation of our usury laws were constitutional, but the question was not directly raised or decided. In this case the defendant urges that such statutes are class legislation,

and therefore unconstitutional. The operations of building and loan associations proper, when they adhere to the basic principles of their organization, differ so radically from ordinary loan transactions as to afford a proper basis for classification, and to justify the legislature in making a separate class of them; hence a statutory exemption of them from the operation of usury laws is constitutional. This proposition is sustained on principle and the great weight of authority, and we hold the statutes here in question constitutional. 4 Am. & Eng. Enc. 1073.

3. The remaining assignments of error, not covered by what we have already said, have been examined, and found to be without merit.

Order affirmed.