AUSTIN SAVINGS & LOAN ASSOCIATION v. FIRST
NATIONAL BANK OF STEWARTVILLE AND OTHERS.
GERALD L. BRYAN, COMMISSIONER OF BANKS,
RESPONDENT.

133 N. W. (2d) 505.

January 29, 1965—No. 39,304.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■

*Eustis, Price, Dunlap & Huisman, Robert R. Dunlap, Claude H. Allen, Allen & Courtney,* and *Robert C. Kucera,* for relators.

*Alderson, Catherwood, Kelley & Ondov,* and *Raymond B. Ondov,* for respondent association.

*Walter F. Mondale,* Attorney General, and *David M. Lebedoff,* Special Assistant Attorney General, for respondent commissioner.

THOMAS GALLAGHER, JUSTICE.

Certiorari[1] on the relation of First National Bank of Stewartville, a corporation; First National Bank of Blooming Prairie, a corporation; Farmers & Merchants State Bank of Blooming Prairie, a corporation; and Minnesota Bankers Association, seeking reversal of an order of Gerald L. Bryan, commissioner of banks of the State of Minnesota,[2]

---

[1] There is some doubt as to whether certiorari applies in these proceedings. The order sought to be reviewed is dated October 7, 1963. The amendment to the articles of incorporation is dated May 31, 1963. On May 22, 1963, an act relating to the procedure for judicial review from decisions of *state administrative agencies* (L. 1963, c. 809; Minn. St. 15.0424, 15.0425, and 15.0426) became effective. Under § 15.0424 provision is made for judicial review of orders such as this in the district court; and under § 15.0426 provision is made for review in this court of any final order or judgment of the district court under § 15.0424. Since none of the parties has raised this issue, the instant case will be considered on its merits without establishing any precedent as to future proceedings under Minn. St. c. 51.

[2] Minn. St. 45.01 provides in part: "The department of commerce shall be under the supervision and control of a commission composed of a commissioner of banks, a commissioner of insurance, and a commissioner of securities. The commission shall be organized in three divisions: a banking division in charge of the commissioner of banks; an insurance division in charge of the commissioner of insurance; and a securities division in charge of the commissioner of securities."

Minn. St. 45.03 provides in part: "The commissioner of banks, the commissioner of insurance, and the commissioner of securities, respectively,

which approved an amendment to the bylaws of respondent Austin Savings & Loan Association, a Minnesota savings and loan association, which provided for the establishment of a branch office and facilities for the conduct of its business at Stewartville, Minnesota. It is the contention of relators that a savings, building, and loan association such as respondent, organized and operating under Minn. St. c. 51, has no authority or right to establish the branch office described.[3]

---

shall have and possess all the rights and powers and perform all the duties which, prior to the enactment of Laws 1925, Chapter 426, were vested by law in the superintendent of banks, the commissioner of insurance, and the state securities commission, respectively, * * *. The commissioner of banks shall be chairman, and the commissioner of securities shall be secretary, of the commission."

Minn. St. 51.02 provides: "The banking division of the department of commerce shall have charge of the execution of all laws relating to the savings, building and loan associations chartered under the laws of Minnesota and the business thereof."

[3]Minn. St. c. 51 is known as the Savings, Building and Loan Act (as distinct from c. 50, which relates to savings banks). Minn. St. 51.01, subd. 3, provides: "A 'local association' is one that confines its field of operation to the county in which is located its principal place of business and to counties immediately contiguous thereto."

Minn. St. 51.01, subd. 4, provides: "A 'state association' is one that, upon application to the state securities commission, has been authorized to do business in additional counties."

Minn. St. 51.06, as amended by L. 1963, c. 606, § 6, provides in part: "Five or more persons may incorporate to form a savings, building and loan association. These persons shall subscribe and acknowledge articles of incorporation specifying:

"(1) The name, the field of operation, the principal place of transacting business, which name shall distinguish it from other corporations and must include therein the words 'savings and loan' or 'building and loan,' * * * and end with the word 'association;' provided, that if at any time it is authorized to do business in added territory it shall include in the name the words 'a state association' in all advertising or literature."

Minn. St. 51.13 provides in part: "The by-laws of every association:

"(1)   Shall state the principal place of business where the association is located;

*     *     *     *     *

On May 22, 1963, respondent filed with the commissioner of banks the application wherein it sought approval of an amendment to its bylaws which would authorize it to establish the branch location at Stewartville. Stewartville is 36 miles from Austin. It is situated in Olmsted County, which is contiguous to Mower County in which Austin is located.[4] Shortly after this application was filed, the District Court of Mower County, upon motion of relators, issued an ex parte order temporarily restraining the commissioner from proceeding under the application described. After a hearing on relators' motion for a temporary injunction, the district court made its order terminating the temporary restraining order and denying the motion for a temporary injunction. Thereupon the commissioner upon due notice to all parties conducted a public hearing on respondent's application, at which all parties were present. Based upon evidence submitted therein, he made findings in substance as follows:

The officers and directors of the Austin Savings & Loan Association are of good moral character and financial integrity and there is a rea-

---

"(16) May contain such other provisions as are not unlawful or inconsistent herewith; and

"(17) May be amended at any time by a majority vote of the members of the association present at an annual or special meeting called for that purpose, the notice of the meeting stating what sections are to be amended; no amendment to the bylaws shall be effective unless and until the commissioner has given his written approval to the amendment."

Minn. St. 51.01, subd. 28, provides: " 'Commissioner' means the commissioner of banking of the banking division of the department of commerce of the State of Minnesota."

Minn. St. 51.36, as amended by L. 1963, c. 606, § 12, provides in part: "Every local association, by provision in its articles of incorporation or bylaws, shall confine its field of operation exclusively to the county of its principal place of business and those immediately contiguous thereto and any additional area within a 100-mile radius from the home office * * *."

[4] Subsequently, respondent filed a like application for the commissioner's approval of a further amendment to its bylaws to authorize it to establish an office in Blooming Prairie in Steele County, which county is also contiguous to Mower County. The application has not been passed upon by the commissioner and presumably will be governed by the decision herein.

sonable public demand for the Austin Savings & Loan Association in Stewartville, Minnesota; and there is a reasonable probability of its usefulness and success there. The probable volume of business in the locality at Stewartville is sufficient to insure and maintain the solvency of the Austin Savings & Loan Association and of other existing financial institutions in that locality without endangering the safety of or injuring any existing financial institutions there.

The members of the Austin Savings & Loan Association have duly approved an amendment to its bylaws providing:

"A. The principal office of the association shall be in the City of Austin, County of Mower and State of Minnesota. It shall confine its field of operation to Mower County and those immediately contiguous thereto and in any other additional area within a fifty mile radius from its home office. In the event that the territory of this association is enlarged as provided by the laws of the State of Minnesota, this association may conduct its operations throughout such enlarged area.

"B. The association may establish branch offices and facilities in * * *

"1. Village of Stewartville, Olmsted County, Minnesota * * *."

Based upon such findings, on October 7, 1963, the commissioner ordered:

"That the above amendment to the by-laws of the Austin Savings & Loan Association of Austin, Minnesota, is approved as to form and legality.

"That in accordance with the above Findings of Fact and Conclusions the above amendment to the by-laws of the Austin Savings & Loan Association of Austin, Minnesota, is approved."

It is relators' contention that there is no statutory authority, either under the Savings, Building and Loan Act (Minn. St. c. 51) or otherwise, for a state-chartered local savings, building, and loan association such as respondent to establish branches; and that accordingly the commissioner of banks was without power to make the order authorizing respondent to do so.

1. We are of the opinion that the statutes above set forth disclose

ample legislative authority for the establishment of branch offices by local savings, building, and loan associations organized under c. 51. Thus, § 51.01, subd. 3, provides that "[a] 'local association' is one that confines its field of operation to the county in which is located its *principal place of business* and to *counties immediately contiguous thereto.*" (Italics supplied.) Likewise, § 51.36, as amended by L. 1963, c. 606, § 12, limits the field of operations of a "local association" organized under c. 51 to the county of "its *principal place of business and those immediately contiguous thereto and any additional area within a 100-mile radius from the home office * * *.*" (Italics supplied.) The use of the term "principal place of business" in §§ 51.01, subd. 3, and 51.36 and the term "home office" in § 51.36, when considered in conjunction with § 51.34, subd. 1,[5] under which state-chartered savings, building, and loan associations are empowered with such other rights and privileges as may be incidental to or necessary for the accomplishment of their objectives and purposes, would appear to clearly manifest both a legislative intent that such associations might establish branch offices incidental to their operations in contiguous counties as well as in the area within a 100-mile radius from their home offices and legislative authorization for so doing. Here it seems clear that respondent's maintenance of a branch office in Stewartville in contiguous Olmsted County, where it has in force and effect a substantial number of mortgage loans and where it is legally authorized to conduct its operations, would be incidental to or necessary for the accomplishment of its objectives and purposes and hence within the general authority granted to it under § 51.34, subd. 1.[6]

---

[5]Minn. St. 51.34, subd. 1, provides: "Every association incorporated pursuant to or operating under the provision of this chapter shall have all the powers enumerated, authorized, and permitted by this chapter, and such other rights, privileges, and powers as may be incidental to or necessary for the accomplishment of the objects and purposes of the association."

[6]Federal savings and loan associations are governed by the Home Owners Loan Act of 1933, 12 USCA, §§ 1461 to 1468. While this statute does not expressly authorize branch offices for associations established under its provisions, the Federal courts have held that they have such authority under rules and regulations of the Federal Home Loan Bank Board,

2. Relators cite Farmers & Mechanics Sav. Bank v. Department of Commerce, 258 Minn. 99, 102 N. W. (2d) 827, in support of their contention that in the absence of express statutory authority a savings, building, and loan association organized under c. 51 may not establish branch offices. The case cited is limited to a consideration of the powers of a savings bank operating under c. 50. There this court stated (258 Minn. 101, 102 N. W. [2d] 829):

"* * * [I]n the absence of express statutory authorization a bank has no right to establish branch banks. * * * Unlike other commercial or manufacturing corporations, banks are quasi-public in nature and the legislatures have in the public interest exercised a careful supervision over them. It appears from the decisions and administrative interpretations that the policy of the law is that banks are not allowed to exercise functions not strictly authorized by law. Bruner v. Citizens' Bank, 134 Ky. 283, 120 S. W. 345."

In Minn. St. c. 50, there is no statute which authorizes a savings bank to do business within counties contiguous to the county in which its principal office is located, or in an area within a 100-mile radius of such office, as is contained in c. 51. Likewise, in c. 50 there does not appear to be any statutory grant of the broad general powers made to state-chartered savings, building, and loan associations under § 51.34,

---

authorized to administer the act. See, North Arlington Nat. Bank v. Kearny Fed. Sav. & Loan Assn. (3 Cir.) 187 F. (2d) 564, 565; Bridgeport Fed. Sav. & Loan Assn. v. Federal Home Loan Bank Board (3 Cir.) 307 F. (2d) 580, certiorari denied, 371 U. S. 950, 83 S. Ct. 504, 9 L. ed. (2d) 499. See, also, First Nat. Bank v. First Fed. Sav. & Loan Assn. 96 App. D. C. 194, 225 F. (2d) 33; Springfield Institution for Sav. v. Worcester Fed. Sav. & Loan Assn. 329 Mass. 184, 107 N. E. (2d) 315, certiorari denied, 344 U. S. 884, 73 S. Ct. 184, 97 L. ed. 684.

Under Minn. St. 51.41, any association organized under c. 51 is authorized and empowered by majority vote at any meeting of its shareholders called for that purpose to convert into a Federal savings and loan association as provided by 12 USCA, §1461, et seq. By doing this, state-chartered local savings, building, and loan associations presumably would then be authorized to open branches as Federal savings and loan associations.

subd. 1. In the case referred to, Federal decisions were noted which upheld the right of Federal savings and loan associations to maintain branch offices even though the act creating such associations was silent on the subject. This court, however, directed attention to the fact that the Federal Home Loan Bank Board has been empowered to make rules and regulations governing the operation of Federal savings and loan associations which have the effect of law and under which the power of such associations to maintain branch offices was clearly implied. There we directed attention to § 48.34,[7] under which the maintenance of branch banks is specifically prohibited.

Finally, this court at times has recognized the distinctive features of savings, building, and loan associations as compared to banks or banking institutions. See, Minnesota Bldg. & Loan Assn. v. Closs, 182 Minn. 452, 234 N. W. 872; Zenith Bldg. & Loan Assn. v. Heimbach, 77 Minn. 97, 104, 79 N. W. 609, 611; and Burnquist and Green, *History of the Banking Laws of Minnesota*, 5 M. S. A. pp. 125, 143. See, also, United States v. Philadelphia Nat. Bank, 374 U. S. 321, 83 S. Ct. 1715, 10 L. ed. (2d) 915. These differences no doubt motivated the legislature in the enactment of statutory regulations for state-chartered savings, building, and loan associations which were entirely distinct from those which it enacted for the regulation of banking institutions.

Affirmed.

---

[7]Minn. St. 48.34 provides: "No bank or trust company organized under the laws of this state shall maintain a branch bank or receive deposits or pay checks within this state, except at its own banking house, and the commissioner shall take possession of and liquidate the business and affairs of any state bank or trust company violating the provisions of this section, in the manner prescribed by law for the liquidation of insolvent state banks and trust companies." This court noted relator's contention that this enactment did not apply to savings banks but found it unnecessary to pass on that question. It is noteworthy, however, that there is no statute containing such a prohibition as far as state-chartered savings, building, and loan associations are concerned.